IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID DUMAS and CORINNE
DUMAS, and TUALATIN VALLEY
TRANSMISSIONS, INC.

           Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF
THE INTERIOR, ACTING BY AND
THROUGH THE BUREAU OF LAND
MANAGEMENT,

           Defendant.
_____

CV 04-489-KI

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

Christopher P. Koback
Davis Wright Tremaine LLP
1300 S.W. Fifth Avenue, Suite 2300
Portland, Oregon  97201

      Attorneys for Plaintiffs

Karin J. Immergut
United States Attorney
Craig J. Casey
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204-2902

      Attorneys for Defendant


KING, Judge:

This matter was tried to the court on May 10 and 11, 2005.  Based upon the testimony presented and the exhibits received into evidence, the court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### FINDINGS OF FACT

This action arises over the ownership of certain property in section 27 of Township 1 South, Range 8 West, Willamette Meridian, Oregon located in Tillamook County (section 27) located between the Trask River and the Trask River Road.

In 1883, Henry Meldrum, U.S. Deputy Surveyor under contract with the General Land Office, the predecessor agency of the Bureau of Land Management (BLM), surveyed the exterior boundaries of Township 1 South (Township 1S).  The survey approved on January 8, 1884 divided Township 1S into 36 sections with each section divided into four quarters establishing the lines and corners of section 27.

Meldrum surveyed the west line dividing section 27 from section 28 beginning at the southwest corner of section 27 common to sections 27, 28, 33 and 34.  Meldrum's field notes indicate that he surveyed from the southwest corner north 40 chains (one chain is 66 feet) and set a post in the ground for the west quarter corner.  Meldrum then walked 4.25 chains north to the south bank

PAGE 2 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

of the Trask River and continued north 6.75 chains to the toll road. From the toll road, the field notes indicate that Meldrum walked north 16.5 chains to a ridge bearing east/west and then 6.5 chains to a gulch. From the gulch, Meldrum walked north 3.75 chains to another ridge bearing east/west, and then 2.25 chains to the place where he set a monument marking the northwest corner of section 27. Meldrum's original field notes accurately describe the locations where he placed the west quarter and the northwest section corner of section 27.

In 1891, the United States patented to Charles Chatterton, a private party, three quarters of the northwest quarter of section 27 as follows: "the West half of the North West quarter and the North East quarter of the North West quarter of Section twenty seven." Plaintiffs' Exhibit 7. This aliquot parts description of the property conveyed was based on the corners and lines set by the 1884 survey. Aliquot parts are fractions of sections established by the rectangular survey system and are described by quarter sections, halves of sections, or subdivisions, or combinations thereof. This conveyance left only the southeast quarter of the northwest quarter of section 27 in public ownership. The dividing line between private and public property in the northwest quarter of section 27 relevant in this case is the line between the northeast quarter and the southeast quarter, the line which separates the property conveyed to Chatterton and the property retained by the United States.[1] This dividing line is midway between the west quarter corner and the northwest section corner of section 27 as set by Meldrum in the 1884 survey.

The original Chatterton homestead remained without division through a number of conveyances, including a conveyance in 1923 to William and Ival Chance. In 1939 and 1940, William and Ival Chance created and sold by deed four separate lots from the original homestead

---

[1] This line is also referred to as the 1/16th line.

property. These four lots which include the property described in plaintiffs' complaint were located between the Trask River and the Trask River Road.

In May, 1954, A. A. Hudson executed a private survey for Kenneth Chance. Chance owned the original Chatterton homestead less the four tracts of land sold in 1939 and 1940. In a notation on the survey plat filed with Tillamook County, Hudson stated: "To determine the actual 1/16 line it will be necessary to subdivide Section 27. At this time the Chances do not wish to do this subdivision." Defendant's Exhibit 120.

Between March, 1975 and July, 1976, the BLM performed a dependent resurvey of certain sections in Township 1S, including section 27. Lester Fischer was the BLM surveyor. A dependent resurvey is a retracement and reestablishment of the lines of the original survey in their true positions according to the best available evidence of the positions of the original corners. The dependent resurvey was accepted in June, 1978 (1978 dependent resurvey). Fischer determined that all corners of section 27, except the southeast section corner common to 26, 27, 34 and 35, were lost and reestablished the section corners by proportionate measurement, including the northwest corner relevant in this case. Proportionate measurement is one that gives equal relative weight to all parts of the line. The excess or deficiency between two existent corners is so distributed that the amount given to each interval bears the same proportion to the whole difference as the record length of the interval bears to the whole record distance. The rules for the restoration of lost corners should not be applied until all original and collateral evidence has been developed. When these means have been exhausted, the surveyor will turn to proportionate measurement, which harmonizes surveying practice with legal and equitable considerations. This plan of relocating a lost corner is always employed unless outweighed by conclusive evidence of the original survey.

In 1984, while doing other survey work in Township 1S, the BLM discovered that the corners established by Fischer on the lines between section 27 and 28 and between section 26 and 27 were not positioned on the ground in accordance with Fischer's field notes and plat. The BLM officially suspended the 1978 dependent resurvey and authorized a corrective dependent resurvey. This corrective dependent resurvey conducted by Frank Tuers began in August, 1984 and was accepted on November 9, 1990 (1990 dependent resurvey). In executing this dependent resurvey, the BLM used proportionate measurement to reestablish the west quarter corner and the northwest section corner of section 27.

Plaintiffs took title to their property from persons who were successors in interest to Chatterton. In 1987 and 1998, plaintiffs David and Corrine Dumas purchased Tax Lot 1100 and Tax Lot 1000 in section 27 of Township 1S. In 1992, plaintiff Tualatin Valley Transmissions, Inc. purchased Tax Lot 1200 in section 27 of Township 1S. Nothing in the deeds that comprise the chain of title to plaintiffs' property indicated that the lots, or any part of the lots, were located anywhere other than the northeast quarter of the northwest quarter of section 27 or indicated that the lots or any part of the lots included land owned by the United States.

On August 14, 2003, defendant verbally notified the Dumas' in a telephone conversation of a suspected trespass. BLM officials informed the Dumas' that they originally suspected there may be an unauthorized occupancy of public land in the 1992 time frame keeping "this information in the back of their mind, periodically mentioning it or speaking of it among themselves." Plaintiffs' Exhibit 26. On August 28, 2003, defendant gave the first notice of a claim of trespass to plaintiffs asserting that plaintiffs' residences are located on public land.

On November 2, 2004, the BLM Director accepted the dependent resurvey of a portion of the east boundary and subdivisional lines, Township 1 South, Range 8 West, Willamette Meridian, Oregon, the subdivision of sections 23 and 27, and the metes-and-bounds survey of Lot 15 in section 27 (2004 dependent resurvey). The subdivision of section 27 established the 1/16th section corner and relied upon the survey corners reestablished by proportionate measurement in the 1978 and the 1990 dependent resurveys to determine that plaintiffs' residences are located on public land.

Plaintiffs retained Terry Jones, a surveyor certified by the State of Oregon, to examine whether the BLM dependent resurveys in 1978, 1990 and 2004 located the survey monuments for the west quarter corner and the northwest section corner of section 27 in the same place that Meldrum set them in the original 1884 survey. Jones testified that he walked the line on the west side of section 27 and found each feature described in the same order by Meldrum. Jones testified that using the 1884 field notes, he found the area where Meldrum set the northwest section corner. Jones testified that he found the topographic features described by Meldrum as well as a hemlock tree stump that was in his opinion an original bearing tree described in the field notes located approximately 16 feet from the area where Meldrum set the northwest section corner.

Jones testified that he found no evidence to contradict Meldrum's report in his field notes that he walked north 4.25 chains to the Trask River after he set the west quarter corner. Jones testified at the trial that the 1978 and the 1990 dependent resurveys did not set the monuments marking the west quarter corner or the northwest section corner in the location that Meldrum placed them in 1884. Jones testified that using the original 1884 field notes to define the line between the southeast quarter and the northeast quarter of the northwest quarter, the line between public and private land in section 27, no portion of plaintiffs' property is located in the southeast quarter of the northwest

quarter owned by the BLM. Plaintiffs' Exhibit 23. Jones testified that using the west quarter corner

and the northwest section corner of section 27 as described in the 1884 field notes, plaintiffs'

properties were a part of the original Chatterton homestead sold into private ownership in 1891. The

court finds that the testimony of Jones was credible and consistent with the best evidence from the

1884 survey.

Mary Hartel, the BLM Chief Surveyor of Oregon, testified that many topographic calls are

an approximation; that due weight must be given to the whole of the topographic calls of the entire

survey; and that one singular call should not be emphasized over another in an arbitrary and

capricious fashion. Hartel testified that the topographic calls to the Trask River and the Tillamook

Toll Road in the 1884 field notes are not reconcilable with the later dependent resurveys of section

27, nor are numerous other topographic calls; that it is not proper to fix the position of the west

quarter corner common to sections 27 and 28 without corroborative evidence; and that in the absence

of such evidence, it is proper to place the restored quarter corner in accordance with the original plat

by Meldrum, utilizing proportionate measurement. Hartel testified that the dependent resurveys

conducted by the BLM in 1978, 1990 and 2004 place plaintiffs' residences on public land in the

southeast quarter of the northwest quarter of section 27.

The evidence at trial established that the west quarter corner and northwest section corner

of section 27 reestablished by proportionate measurement in the 1978, 1990 and 2004 dependent

resurveys are not consistent with the locations described by Meldrum in the field notes of the 1884

survey. Meldrum's field notes locate the west quarter corner of section 27 at 4.25 chains (280 feet)

south of the Trask River. The dependent resurveys by the BLM locate the west quarter corner in the

bedrock of the Trask River. The evidence at trial established that this difference in location cannot

be explained by a change in the location of the Trask River. The dependent resurveys locate the

northwest section corner by proportionate measurement approximately 460 feet north of the location

described by Meldrum in the field notes of the 1884 survey. The 1884 field notes located the

northwest section corner 2 chains south of the gulch, while the dependent resurveys located the

northwest section corner approximately 5.5 chains north of the gulch. Defendant's Exhibit 111.

Using precisely the measurements from the original 1884 survey to locate the west quarter corner

and the northwest section corner of section 27, plaintiffs' property described in the complaint was

located in the northeast quarter of the northwest quarter of section 27 sold into private ownership in

the 1891 Chatterton patent.

## CONCLUSIONS OF LAW

Plaintiffs seek a decree quieting title to the property described in the complaint in plaintiffs'

names only and a declaration that the BLM has no right, title or interest in the property pursuant to

29 U.S.C. § 2409a.[2] Plaintiffs have the burden to show by a preponderance of the evidence that their

property was located in the northeast quarter of the northwest quarter of section 27 conveyed into

private ownership in 1891.

The government is bound by the last official survey accepted prior to its divestment of title.

*Unites States v. Reimann*, 504 F.2d 135, 138 (10th Cir. 1974). Original monuments of survey

established during a government survey, when properly identified, control courses and distances, and

field notes and an official plat of government surveys of record will control in ascertaining locations,

---

[2] Counsel for the government informed the court at the start of the trial that he believed there was a statute of limitations defense based upon 28 U.S.C. § 2409a(g). This defense was not raised by the government in the pleadings, and the court will not amend the pleadings at this late date.

even though the monuments established are gone. In ascertaining the lines of land or in reestablishing the lines of a survey, the footsteps of the original surveyor, so far as discoverable on the ground, should be followed, and it is immaterial if the lines actually run by the original surveyor are incorrect. *Reimann*, 504 F.2d at 140; *Vaught v. McClymond*, 116 Mont. 542, 155 P.2d 612 (1945).

The 1884 survey by Meldrum, the last accepted survey prior to the issuance of the Chatterton patent in 1891, is the controlling survey as to the location of the west quarter corner and the northwest section corner establishing the line between the northeast quarter and the southeast quarter of the northwest quarter of section 27 relevant in this case. The location of corners and lines established by the government survey are conclusive. 43 U.S.C. §§ 751, 752. The official field notes maintained by Meldrum are presumed to be correct. Plaintiffs proved by a preponderance of the evidence that the field notes prepared by Meldrum accurately recited the location at which Meldrum placed the west quarter corner and the northwest section corner of section 27 and that the dependent resurveys subsequent to the Chatterton patent did not locate the west quarter corner and the northwest section corner of section 27 in the position that Meldrum placed these corners in the original 1884 survey.

Using the location of the corners and lines from the 1884 survey to establish the west quarter corner and the northwest section corner of section 27 and to determine the dividing line between public and private property as of 1891, all of the property described in plaintiffs' deeds and in plaintiffs' complaint is located in the northeast quarter of the northwest quarter of section 27 in private ownership as of 1891. The court concludes that plaintiffs have carried their burden to show

by a preponderance of the evidence that their property was located in the northeast quarter of the northwest quarter of section 27 conveyed into private ownership in 1891.

Prior to title passing from the United States, the government has the power to survey and resurvey, establish and reestablish boundaries on its own land.  *Lane v. Darlington*, 249 U.S. 331 (1919).  In surveying a tract of land according to a former plat or survey, the surveyor's only duty is to relocate, upon the *best evidence* obtainable, the corners and lines at the same place where originally located by the first surveyor on the ground.  In making the resurvey, he has the right to use the field notes of the original survey.  The object of a resurvey is to furnish proof of the location of the lost lines or monuments, not to dispute the correctness of or to control the original survey.  The original survey in all cases must, whenever possible, be retraced since it cannot be disregarded or needlessly altered after property rights have been acquired in reliance upon it.  *Vaught v. McClymond*, 116 Mont. 542, 155 P.2d 612 (1945).  It is well settled that "once patent has issued, the rights of patentees are fixed and the government has no power to interfere with these rights, as by a corrective resurvey."  43 U.S.C. § 772;[3] *Cragin v. Powell*, 128 U.S. 691 (1888); *United States v. State Inv. Co., et al.*, 264 U.S. 206 (1924)*; Reimann*, 504 F.2d at 138.

The rights of the private landowners in this case must be determined by the best evidence from the 1884 survey, including the notes, lines and descriptions.  The location of the northwest

_____

[3] 43 U.S.C. § 772 provides that "the Secretary of the Interior may, as of March 3, 1909, in his discretion cause to be made, as he may deem wise under the rectangular system on that date provided by law, such resurveys or retracements of the surveys of public lands as, after full investigation, he may deem essential to properly mark the boundaries of the public lands remaining undisposed of:  *Provided*, That no such resurvey or retracement shall be so executed as to impair the bona fide rights or claims of any claimant, entryman, or owner of lands affected by such resurvey or retracement.

corner and the west quarter of section 27 utilized to determine the line between private and public property in this case cannot be reestablished by dependent resurveys subsequent to the sale of the property in a manner which impairs plaintiffs' bona fide property rights. While defendant can order a resurvey for its own information, the government is not empowered with the authority to disregard or nullify -- to the detriment of intervening patentees -- that portion of the 1884 survey which conflicts with the dependent resurveys conducted after the land was conveyed into private ownership.

Defendant has no legal right, title or interest in plaintiffs' property located by the 1884 survey in the northeast quarter of the northwest quarter of section 27 and conveyed into private ownership in 1891. Plaintiffs are entitled to a decree quieting title to the property in plaintiffs' names only and a declaration that the BLM has no right, title or interest in the property.

Since the court has concluded that plaintiffs are entitled to prevail on the first claim for relief for quiet title, the court need not resolve the second claim for relief under the Administrative Procedures Act. Plaintiffs shall prepare a proposed judgment. The court will resolve any claim for attorney fees pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure.

DATED this ___20th___ day of May, 2005.


/s/ Garr M. King
GARR M. KING
United States District Judge